IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 22, 2003

## STEVEN BERNARD WLODARZ v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Hawkins County**
**No. 7772     James E. Beckner, Judge**

_____

**No. E2002-02798-CCA-R3-PC**
**December 3, 2003**
_____

The petitioner, Steven Bernard Wlodarz, appeals the Hawkins County Criminal Court's denial of his petition for post-conviction relief from his guilty pleas to first degree premeditated murder, attempted first degree premeditated murder, two counts of aggravated assault, and one count of manufacturing a Schedule VI controlled substance and resulting sentence of life without parole. He claims that his guilty pleas were not knowingly, intelligently, and voluntarily entered because (1) his trial counsel coerced him into pleading guilty, (2) his trial counsel failed to inform him of important defense evidence before he accepted the state's plea offer, and (3) he was taking medications that may have affected his ability to understand his pleas. In addition, he contends that he received the ineffective assistance of counsel because his trial attorneys waived one of his preliminary hearings without his consent, failed to file a motion to suppress evidence, and failed to prepare a defense. We affirm the trial court's denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and NORMA MCGEE OGLE, J., joined.

Wayne R. Stambaugh, Morristown, Tennessee, for the appellant, Steven Bernard Wlodarz.

Paul G. Summers, Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; C. Berkeley Bell, Jr., District Attorney General; and John Douglas Godbee, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This case relates to the petitioner's killing Officer Gerald Gibson of the Hawkins County Sheriff's Department. Although no facts were presented at the guilty plea hearing,[1] the record reflects that on July 13, 2000, police officers were dispatched to the scene of a home burglary on Short Road near Rogersville, Tennessee. When they arrived, a witness gave a description of the suspect, which matched the petitioner. Officers went to the petitioner's home and confronted him, and the petitioner pulled out a shotgun and ordered the officers off his property. The officers left the scene; obtained arrest warrants against the petitioner for attempted aggravated burglary, vandalism, and two counts of aggravated assault; and returned to the petitioner's home. The petitioner barricaded himself inside, and a tactical unit was called. After several hours, the unit tried to force the petitioner out of his house by shooting tear gas canisters into it. During the melee, the victim was shot once in the head.

Pursuant to a plea agreement, the petitioner pled guilty on September 18, 2001, to first degree premeditated murder; attempted first degree premeditated murder, a Class A felony; two counts of aggravated assault, a Class C felony; and one count of manufacturing a Schedule VI controlled substance, a Class C felony. The trial court sentenced him as a Range I, standard offender to concurrent sentences of life without parole for the murder conviction, twenty-five years for the attempted murder conviction, six years for each aggravated assault conviction, and six years for the manufacturing a Schedule VI controlled substance conviction.

At the post-conviction evidentiary hearing, the petitioner testified that on the day of the offenses, he began drinking shortly after daylight and drank one-half a bottle of whiskey. He said the police had no probable cause to suspect a burglary had been committed when they came to his home on July 13, 2000. He said that when police officers first arrived at his house, they did not have an arrest warrant and did not tell him why they were there. He said that the day after the offenses, the police obtained a search warrant for his house. He said that during a preliminary hearing for his burglary, assault, and vandalism charges, officers made statements that contradicted the affidavit that had been filed to obtain the search warrant.

The petitioner testified that he was charged with capital murder and that two attorneys were appointed to represent him. He said that he met with his lead trial attorney ten to twenty times and that some meetings lasted more than one hour. He acknowledged that his lead attorney went over the charges and the elements of the offenses with him. He said he was evaluated by a psychologist and was found to be competent to stand trial. He said that his lead attorney told him he had no defense and that he would face the death penalty if he did not accept the state's plea offer. He said the fact that he drank alcohol on the day of the offenses should have been considered by his attorneys

---

[1]The record reflects that defense counsel agreed for the state to file a "written offense report containing all the facts of the case" and to rely on the "image book" previously filed, which the trial court described as "rather exhaustive of all the pictures and documents in the case." The trial court also referred to hearings and pretrial conferences involving evidence that defense counsel stipulated to be the state's evidence.

and that his lead attorney told him intoxication was not a defense. He said that he had other defenses such as self-defense but that he and his attorneys did not discuss them. He acknowledged that he and his lead attorney talked about bullet fragments that were recovered from the victim and that his attorneys had the bullet fragments tested.

The petitioner testified that his lead trial attorney told him that most people on death row "go nuts because they are isolated and they have no relationship with anyone outside." He said his lead attorney told him that if he accepted the state's plea offer, he could continue to visit with his family. He said that a few days before he accepted the state's offer, his lead attorney told him that he needed to telephone his ex-wife and children. He said that his lead attorney had his ex-wife advise him to plead guilty and also had Roz Andrews, a mitigation consultant, talk to him and convince him to accept the state's offer. He said that he was prescribed Paxil and Depokote in jail, that he took the drugs from July to November 2001, and that the medications may have affected his judgment.

On cross-examination, the then fifty-year-old petitioner testified that he had a high school diploma. He said that on the day of the offenses, he did not aim before he fired his gun and that he only fired "back-off" shots in response to two shots that had been fired at him. He acknowledged that the trial court asked him a series of questions at the guilty plea hearing and that the court asked him if he was under the influence of anything that might affect his understanding of the hearing. He said that if he had not answered the trial court's questions appropriately, the court would not have accepted his pleas and he would have faced the death penalty.

The petitioner's lead trial attorney testified that he had been practicing law since 1977. He said that after he was appointed to represent the petitioner, he assembled a defense team that included another appointed attorney, an investigator, a psychologist, a mitigation consultant firm, and a jury consultant. He said that he represented the petitioner at the preliminary hearing on the attempted burglary and vandalism charges. He said that after the hearing, the state filed additional charges against the petitioner. He said that a few days after the shooting, his investigator visited the crime scene. He said he also went to the crime scene ten to twenty times. He said that the defense objected to everything the state presented and that hearings were held. He said he went over the charges and the state's plea offer with the petitioner. He said he did not coerce the petitioner into pleading guilty.

On cross-examination, the petitioner's lead attorney testified that he was handling many other cases while he was representing the petitioner. He said that at the preliminary hearing, officers testified that they went to the petitioner's house with an arrest warrant. He said that he and his defense team met with the petitioner many times and that in order to defend the case, he was going to stress to the jury that the police officers' actions drove the petitioner to shoot the victim. He said that according to state witnesses, two shots were fired from a window in the petitioner's home and one of them struck the victim as the victim peeked around the corner of a shed in the petitioner's yard. He said that bullet fragments found in the victim were tested, that the fragments did not match the petitioner's gun "perfectly," and that he could have cross-examined state witnesses extensively about that. He said the fragments matched another gun found in the petitioner's house that was not

fired by the petitioner. He said that he received some of the tests results before the petitioner pled guilty and that he may have received one set of results after the petitioner's guilty plea hearing.

The petitioner's lead attorney testified that the petitioner told him the petitioner had been drinking on the day of the offenses. He said, though, that the petitioner made statements which indicated the petitioner had not been intoxicated. He said that he told the petitioner intoxication was not a defense but that it could negate the mental state required for the crime. He said that he was preparing for trial when the petitioner pled guilty and that the petitioner's defense was going to focus on the police's actions and the petitioner's psychological background. He said that such a defense would have been difficult but that the petitioner may have been acquitted with luck. He said that the petitioner had an I.Q. of 107 and was bright at times and depressed at times. He said the petitioner wanted to talk to the petitioner's family and Roz Andrews about the state's plea offer. He said that no one told the petitioner he had no defense and that the petitioner decided to plead guilty.

The trial court determined that the petitioner's trial attorneys developed defenses and theories of the case, filed every conceivable motion, considered all of the evidence, investigated the case, and did everything that could be expected for the petitioner. It stated that the petitioner discussed the state's plea offer with his family and a mitigation consultant and that he decided to plead guilty in order to avoid the death penalty. The trial court noted that the petitioner's guilty plea hearing transcript spans twenty-one pages, is thorough, and shows that the petitioner was alert, sober, articulate, and understood what he was doing when he pled guilty. The trial court also noted that the petitioner stated at the guilty plea hearing that he was not forced or coerced to plead guilty and that he was satisfied with his attorneys. The trial court stated that the evidence against the petitioner had been overwhelming and that a jury probably would have imposed the death penalty. The trial court held that his guilty pleas were knowingly, intelligently, and voluntarily entered and that the petitioner did not receive the ineffective assistance of counsel.

Initially we note that the petitioner and his counsel have submitted as a supplement to his brief the petitioner's personal rendition of the events surrounding the shooting, the police's conduct, and his trial attorneys' deficiencies. The supplement also contains the petitioner's assertions regarding his post-conviction counsel's deficiencies. Documents and photographs are attached. However, we are limited to the facts as they were developed in the trial court, their first assertion upon appeal being futile. As for the complaints about post-conviction counsel and the lack of a continuance to prepare for the hearing, the record is insufficient to warrant any action by us on appeal.

## I. KNOWING, INTELLIGENT, AND VOLUNTARY PLEAS

The petitioner contends that his guilty pleas were not knowingly, intelligently, and voluntarily entered because his attorneys coerced him into pleading guilty by telling him that life on death row would be harsh and by having his family and a mitigation consultant convince him to accept the state's plea offer. In addition, he contends that his pleas were not knowingly and voluntarily entered because his attorneys did not tell him about the bullet fragment test results before he accepted the

state's offer. Finally, he contends that his pleas were not knowingly, intelligently, and voluntarily entered because he was taking medications at the time of the plea hearing that may have affected his ability to understand what he was doing. The state claims that the petitioner knowingly, intelligently, and voluntarily entered his pleas. We agree with the state.

In order for a conviction based upon a guilty plea to comport with due process, the plea must be voluntarily, knowingly, and understandingly entered. Boykin v. Alabama, 395 U.S. 238, 242-44, 89 S. Ct. 1709, 1712 (1969). A guilty plea is not voluntary "if it is the product of '[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats . . . ." Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting Boykin, 395 U.S. at 242-43, 89 S. Ct. at 1712). The standard for assessing the validity of a guilty plea is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" Id. (quoting North Carolina v. Alford, 400 U.S. 25, 31, 91 S. Ct. 160, 164 (1970)). "[T]he record of acceptance of a defendant's plea of guilty must affirmatively demonstrate that his decision was both voluntary and knowledgeable, i.e., that he has been made aware of the significant consequences of such a plea; otherwise, it will not amount to an 'intentional abandonment of a known right.'" Mackey, 553 S.W.2d 337, 340 (Tenn. 1977). To assess whether a petitioner entered a knowing, voluntary, and intelligent guilty plea, this court must consider the totality of the circumstances. State v. Turner, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995).

In this case, the petitioner's lead trial attorney testified that he had developed a defense, that this would have been a difficult case to win, that the petitioner decided to accept the state's plea offer after speaking with his family and a mitigation consultant, and that no one coerced the petitioner. The trial court accredited the attorney's testimony and held that the petitioner was motivated to plead guilty by his desire to avoid the death penalty. We note that the petitioner testified that he appropriately answered the trial court's questions at the guilty plea hearing in order for the trial court to accept his guilty pleas and allow him to avoid the death penalty. This supports the trial court's concluding that the petitioner decided to plead guilty in order to receive a lesser punishment.

As to the petitioner's claim that medication affected his ability to understand his pleas, the trial court determined that the guilty plea hearing transcript demonstrated otherwise. Our review of the guilty plea hearing shows that the trial court questioned the petitioner extensively and that the petitioner answered yes and no at the appropriate times. In addition, the trial court asked the petitioner if he had any physical or mental conditions that would prevent him from understanding the hearing, and the petitioner answered, "No, your Honor." Regarding the petitioner's claim that his pleas were not knowingly and voluntarily entered because his attorneys did not tell him about the bullet fragment test results, we note that the petitioner's attorney only testified that the bullet fragments did not match the petitioner's gun "perfectly." The attorney also stated that state witnesses were prepared to testify that two shots were fired from a window in the petitioner's house and that one of the shots hit the victim. Moreover, the petitioner has presented no scientific evidence to show that the bullet fragments recovered from the victim did not come from the petitioner's weapon. The trial court held that the evidence against the petitioner had been overwhelming. We conclude that

the petitioner has failed to show that he did not knowingly, intelligently, and voluntarily enter his guilty pleas.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

The petitioner contends that he received the ineffective assistance of counsel because his trial counsel waived the preliminary hearing for his murder, attempted murder, and manufacturing charges without his consent; failed to file a motion to suppress evidence that was obtained pursuant to an illegal search warrant; and failed to prepare a defense. The state claims that the petitioner received the effective assistance of counsel. We agree with the state.

Under the Sixth Amendment, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial in terms of rendering a reasonable probability that the result of the trial was unreliable or the proceedings fundamentally unfair. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72, 113 S. Ct. 838, 842-44 (1993). The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court decided that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases. Further, the court stated that the range of competence was to be measured by the duties and criteria set forth in Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974), and United States v. DeCoster, 487 F.2d 1197, 1202-04 (D.C. Cir. 1973). Also, in reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). Thus, the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance. Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. See Hellard, 629 S.W.2d at 9; DeCoster, 487 F.2d at 1201.

The burden is on the petitioner to prove his grounds for relief by clear and convincing evidence. T.C.A. § 40-30-210(f). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

Regarding the petitioner's claim that his attorneys were ineffective for waiving the petitioner's preliminary hearing on the murder, attempted murder, and manufacturing a controlled

substance charges, we note that the petitioner never questioned his lead attorney at the evidentiary hearing about why the attorney waived the preliminary hearing. In any event, the petitioner has presented no evidence that waiving the preliminary hearing changed the outcome of his case. As to his claim that his attorneys failed to develop a defense, the trial court accredited the petitioner's lead trial counsel, who testified that he thoroughly investigated the petitioner's case and planned to use the police's actions and the petitioner's mental condition as a defense. Finally, as to the petitioner's claim that his attorneys were ineffective for failing to file a motion to suppress evidence that was obtained as a result of an illegal search warrant, this court has stated that if arguable grounds exist to suppress incriminating evidence, then an attorney, as a zealous advocate for the client, should move to suppress that evidence. See Robert C. Bellafant v. State, No. 01C01-9705-CC-00183, Maury County, slip op. at 10 (Tenn. Crim. App. May 15, 1998). However, the petitioner has presented no proof that any search warrant was invalid and, therefore, that any evidence collected was inadmissible. As a result, he has failed to show that his attorneys rendered deficient performance for failing to file a motion to suppress or that he was prejudiced by any deficiency. Thus, he is not entitled to relief.

Based upon the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
JOSEPH M. TIPTON, JUDGE